Ms. Sanchez? May I reserve time? Yes. How much are you asking for? Two minutes, please. Two minutes. Thank you. May I please the Court of General Dean Sanchez on behalf of the plaintiff appellee, plaintiff appellee from the law firm of Rochewood in Portland, Maine. As with any insurance case, the first question has to be, what was the insurable risk? And unlike most ERISA cases or LT long-term disability cases, what we do see in this particular case is that the plaintiff was covered by enhanced coverage. Was the enhanced coverage subject to an enhanced premium? Yes, it was. In which the enhanced coverage was, as opposed to what we usually see, own occupation. Own occupation was specifically defined that it would cover her area of practice of law and that was determined by her time sheets and by the job description. There is no dispute that her specialty occupation was environmental law. There is also no dispute that in 2011, the time period in which Ms. Doe claimed she became disabled, she was no longer doing environmental law. We say she was not doing it because she was disabled. The reason we say that is there is not a shred of anything in the record that shows that in 2011, when we claimed she became disabled, that her condition was worse at that time period than the time period in 2012 when Standard accepted liability and found her to be disabled. You make an argument which is, if you will, separate from the assessment of the medical evidence. Okay, so let's step back. We have an arbitrary and capricious standard of review. On the other hand, something that strikes us as being unreasonable can be arbitrary and capricious under First Circuit case law. So your other argument is for an enhanced premium, enhanced coverage was purchased for own occupation, but they turned down her application for long-term insurance as of that date in November. By using as a reference point to evaluate her work, not environmental lawyer, but just lawyer, and that that is inherently arbitrary because it's directly contrary to the type of coverage that was purchased. Correct? Correct, Your Honor. information. So what's your response to that? I don't know if they ever said that the plaintiff did not provide more information in terms of what an environmental lawyer did. What they did is they first established what was the occupation by looking at the job description in the timesheets. Okay, in terms of, and they say she was doing environmental law under the policy. What they then did is they said, wait a second, we don't see in the DOT, the Dictionary of Occupational Titles, in the DOT, that she was doing environmental law. We don't see environmental law being listed. So what's the closest thing? And that's a general attorney. And that is, under the case law in this district, that is not inherently wrong that for an own occupation, you look at the dictionary. I would say it was unreasonable then that they never, although quoted in one occupational review, they never really again analyzed her ability on a reasonably continuous basis to be able to do the skills of the attorney. Well, but the question is, what evidence did you present for it to show what an environmental lawyer does? Your Honor, we relied upon the employer. And then also we would say it was the job description and the timesheets. But in fact, Your Honor, there's no dispute that she was doing environmental law. Yeah, there's no dispute about that. There's no dispute. The company, in fact, acknowledges that she stopped in November. She wasn't doing environmental law. There is no per se rule in our case law that says you can pick any occupation from the DOT. I believe you misspoke to the extent you suggested that. And I thought you were making an argument, but now I'm not so sure, that if the coverage was for environmental lawyer, you cannot transmute that into something less, a general lawyer. You can transmute it. See, it was, the review of the record is the employer identified environmental lawyer. They had those duties as set forth. They then go to the DOT and they can't find environmental lawyers. So why don't they look someplace else? That was my argument, that they then should have, they had two occupational people. They should have then continued to look for other aspects of environmental law. But turning to the DOT for the general, if you look at it, there were a panoply of duties from trusts and wills to, in fact, some of the duties, I will acknowledge, of an environmental lawyer were in fact reflected in the DOT. But when they began to do this larger subset of duties, they then looked at her time sheets from when she was doing, first of all, a lot of times it merges the non-billable, I'm talking not the PTO, not the holiday time, that there was some non-billable work. Sometimes you'll see that they'll say non-billable clients. I challenge that. If you look at the time sheets, she was, with limited exception, not representing clients. She was doing association work. And in fact, on January 27th and 28th, the last two days that she was supposedly not disabled, she was going to a bar meeting. She had no position there. She was just attending as a bar meeting. From those time sheets, they then look at attending meetings. They actually said she did case preparation. I don't see those in the records. They said she went to a law court argument. If you look, she attended it. She did not put in time sheets. So the point being with respect to the occupational is that by opening that up, they could then do what were relatively non-challenging, non-environmentally, not presenting, not settling environmental cases and say she was doing the occupation. It was a three-step dilution. The other issue with respect to the occupation is that she needed to do it on a reasonably continuous basis. In their appeal letter, they said that in January, she was doing these non-billable skills on almost a full-time basis. If you look at the time sheets, and then we'll look from December and January, but please include November, where she didn't even put in time sheets. What you will see, if you average those three months out, is that she did 23 hours of billable and 38 hours of what I'll call working non-billable. How can that be a reasonably continuous basis? Thank you. Good morning, Your Honors. Brooks McGratton representing the Defendant Standard Insurance Company. The trial judge here found that the administrative record could reasonably support We are not concerned with what the trial judge found. Okay? So can you move to address the argument that we've just been discussing? Certainly. I think it's important to distinguish that this plan does not pay benefits if the plaintiff stops practicing environmental law. That's not the test. No, the test is whether she's disabled from doing it. Correct. So you come from a large law firm, and on its website it advertises a specialty area of practice called environmental law. It distinguishes it from the general practice of law. And in fact, if you go to most dictionary definitions, you will find that there is not an equation made between having a specialty in environmental law and the general practice of law. So counsel has told us that that choice by your client to measure her disability by the standards of the general practice of law was arbitrary. And then to the extent there are some commonalities, if you look at the time records, what you find is that they don't substantiate your position. So that's to me at the heart of this case, and I'd like you to respond to it. Thank you, Judge. On the issue of the requirements of the plaintiff's position, standard asks the employer for a job description of what an environmental attorney in that firm does. And that appears on page 334 of the administrative record. The employer describes that position in terms of activities such as researching, negotiating, advising, drafting, lobbying, and in fact... No, it's not. But the fact that the plaintiff did engage in those activities, albeit not billing clients as an environmental attorney, but doing pro bono work and doing committee work, is evidence of her capability of executing the duties of an environmental attorney. And I don't want there to be lost in this discussion. At the bottom, the court has to determine is there substantial evidence in the record for the start date of disability. Well, do you claim that the fact that she was doing some institutional work for the Bar Association is equivalent to the demonstration of the expertness that an environmental lawyer is supposed to show in advising clients? No, only that her committee work and her pro bono work is evidence of what she was capable of doing. But unless you simply make, by definition, an equation of environmental practice and general law practice, then that evidence does not get you where you need to go. I respectfully disagree, because I would submit there are three categories of evidence that supports standards determination here. Foremost, treatment records. That's where standards come first. Earl, Earl, please. That's a whole aspect of your case, but it has nothing to do with the standard by which you evaluated the evidence. So what's number two and what's number three? And we'll tell you whether we think you've answered our question. Well, let me kind of jump in here, because I'm having the same difficulty that you've already had. It seems to me that what you've done on your position, then, you've effectively gutted the special occupation provision of the law firm's LTD plan. Because you've just said, well, there's no definition of environmental law, so you just pick up general law. Well, if you do that, then why does the firm even have the special provisions there? And pay you the extra money it paid. Because, respectfully, the question is not whether she was actually doing environmental law, but was she capable of doing it? And that's the relevance of the treatment records. That is the relevance of the consulting positions of patients. Well, it looks to me like the argument, I mean, there's a very short period of time from, I believe it was November 11th of 2016 to January 12th, I believe is the date you or the people decided was the difference between her disability. Now, first, that's pretty narrow of time. Yes. So I'm hung up on why, under the special provision of the occupation, it's just as easy for me reading this to determine that her disability actually began in 2016. At some point, I think at one time it was alleged it started back in October, all the way through there. Yes. And I think that is precisely why the evidence of what were the discussions, the communications between the plaintiff and her physicians about her condition and the impact of work on her condition. No, no, no. It comes back to me, was her practice that of environmental law at the time of her disability? In November, it seems to me that was her designation as environmental law, even though the time sheets and everything, as all lawyers do other things. Yes. But then you come up with just January, I mean, that's such a close interval that how in the world, in light of this record, you can't say that her disability started in November rather than January. Is that so sure? Standard determined that the disability onset date was January 28, 2012. Okay. That number is not arbitrary. As part of its standard operating procedure, when a claim comes in, Standard sent a questionnaire to each of her three treating physicians with a very simple direct question. When did you recommend that your patient stop working? And the answers were remarkably consistent. Counsel, thank you. You could tell us that. You've told us that in your brief. What are your points two and three? That there is additional substantial support for Standard's determination from opinions of three consulting psychiatrists as to the actual start date of disability. And finally, I think the court, and this is the point we began with, the court looks at plaintiff's actual activities to determine the extent to which she was impaired by her depression. And the court has the time sheets. The court can see what she was doing at work. In addition, during the critical period, early part of 2012, the plaintiff took trips to New York, to Texas, to New Orleans, and was planning a trip to Paris. That is not consistent with these individuals. From being disabled to do environmental laws, that you take a trip to Paris? Please. Well, I understand, but I think the issue is the extent of her impairment and that evidence is not consistent with someone who is severely impaired. Unless the court has other questions. Has the company refunded the extra premium? I have no knowledge of that, Your Honor, and there's nothing in the record at all about premiums paid for this plan. One final matter. This is a matter of procedure. I understand the decision went through two subsequent administrative reviews, and then after a year delay, a request for a third administrative review, and that's when the supplemental statements of the plaintiff, Dr. White. At some point, it's either your, it may be a treating or a psychiatrist looking at this says, okay, so what standard do I use for what an environmental lawyer does? And the response was, okay, we're going to this Department of Labor general definition, and that's the standard that you should use. Obviously, I have a problem with that, and I'm not certain you've yet responded. Well, respectfully, I think the consulting psychiatrist in each case is looking at treatment records and trying to determine what is a diagnosis, what is the extent of impairment, what is the course of treatment. And if it was arbitrary to use that standard, then her or his opinion is suspect because it evaluated on the wrong basis. I respectfully disagree. Thank you. Thank you. Counsel, I saw you shaking your head. Please don't do that. I'm sorry. You reserved two minutes. You knew you had time to get up and disagree, but that's not good courtroom practice. Thank you, Your Honor. What I would like to address is where the consulting physicians, they rely very heavily on them. Dr. Grant was the first one. If you look, she actually did not review any of Dr. White's records from December of 2011. So that's one doctor who did not have the evidence, the critical evidence from 2011 from her treating psychologist. Dr. Klein, the last review, stated that Dr. Peterson, the PCP, excuse me, the gynecologist, who also was the first person to identify her in November of 2011, also specifically said that Dr. Peterson started depression treatment in 2012. So two of the consulting physicians did not, in fact, acknowledge or review records from the critical 2011 time period. Also, to the extent they do rely upon trips, et cetera, from New York, that all occurred at a time when, in fact, Standard found her to be disabled. And her psychologist and her doctor specifically encouraged her to go on those trips because she was having severe suicidal ideation. I would also state that for contemporaneous records that are being relied upon, the attending physician statements by Dr. White and Dr. Peterson, although they said recommended in February, which was when they were asked to complete the form, the form also said describe the changing conditions since the onset of symptoms. Dr. White stated since the onset of symptoms, it was unchanged. Dr. Peterson, in certifying disability, said from the onset of symptoms, the condition had, in fact, improved. So there are contemporaneous records relied upon by Standard from their attending physician. Counsel, how much money is at stake here? A little bit more than $120,000. Because of the difference in the year in which she is determined to have been disabled. Correct. All right. Thank you.